UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Simcha Plisner, as owner and resident of
homestead at 681 County Road B2 East
in Little Canada, Minnesota, jointly,

                Plaintiff,

v.                                                                                   Civ. No. 04-3352 (JNE/SRN)
                                                                                  ORDER

Tom Sweeney, Esq., Michael I. Fahey, Esq.,
Joel Hanson, and the City of Little Canada,

                Defendants.

---

Robert Bennett, Esq., and Ryan O. Vettleson, Esq., Flynn, Gaskins & Bennett, L.L.P., appeared for Plaintiff Simcha Plisner.

Jessica E. Schwie, Esq., and Pierre N. Regnier, Esq., Jardine, Logan, & O'Brien, P.L.L.P., appeared for Defendants Tom Sweeney, Michael I. Fahey, Joel Hanson, and the City of Little Canada.

---

      Simcha Plisner brought this action against the City of Little Canada (City), Tom Sweeney, Michael Fahey, and Joel Hanson (collectively Defendants). Sweeney is the city attorney, Fahey is the mayor, and Hanson is the city administrator.[1] Plisner alleges that Defendants violated his civil rights by assessing a surcharge to his water and sewer bill, pursuant to a City ordinance, after Plisner refused to permit an inspection of his property by City agents without a warrant.[2] The ordinance at issue relates to the discharge of surface waters and restricts the use of sump pumps by property owners within the City. The case is before the Court on

---

[1]     Plisner named Sweeney, Fahey, and Hanson as defendants in their individual and official capacities.

[2]     Plisner, who filed both the complaint and amended complaint *pro se*, did not identify any specific federal law or constitutional provision in his pleadings. In denying his motion to remand, the Court nevertheless concluded that Plisner brought a claim under 42 U.S.C. § 1983 (2000).

1

Plisner's motion for partial summary judgment and Defendants' motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part both motions.

## I. BACKGROUND

The City is located in Ramsey County, Minnesota. Section 205.080 of the Municipal Code of the City of Little Canada provides that homeowners who have a sump pump in their home shall not cross-connect the sump pump's discharge pipe with a sanitary sewer service pipe. *See* Little Canada, Minn., Mun. Code § 205.080. On February 25, 1998, the City Council passed Ordinance No. 473 (Ordinance) amending Section 205.080 to provide for a city-wide sump pump inspection program. Under the terms of the Ordinance, employees or agents of the City were to inspect homes within the City for the existence of a sump pump and to determine whether any such sump pump was cross-connected with the City's sanitary sewer system. In cases where homeowners refused to grant access to their homes for an inspection, the Ordinance called for a surcharge. In relevant part, the Ordinance provided:

> D. Every person owning improved real estate that discharges into the City's sanitary sewer system shall allow inspection by authorized City employees or its agents of all properties or structures connected to the sanitary sewer system to confirm there is no sump pump or other prohibited discharge into the sanitary sewer system. Any persons refusing to allow their property to be inspected shall immediately become subject to the surcharge as described in Section 205.080G. hereinafter.
>
> . . . .
>
> G. A surcharge of One Hundred and no/100 Dollars ($100.00) per month is hereby imposed and shall be added to every sewer billing, to property owners who are found not in compliance with this Section. The surcharge shall be added every quarter until the property is verified to be in compliance through the City's inspection program.

Plisner, a citizen of the City and owner of a home subject to the Ordinance, refused to allow the City to inspect his property pursuant to the Ordinance. On April 4, 2001, the City sent

a letter to Plisner's residence stating that his was one of only twenty properties in the City yet to be inspected as part of the sump pump inspection program. In the letter, the City noted that "if we do not hear from you by Wednesday, April 18, 2001, we will request the City Council to authorize staff to either impose the surcharge or request the Ramsey County Sheriff to assist in the inspection or both." The City began imposing the surcharge on June 1, 2001, which appeared on Plisner's water and sewer bill as the line item: "S. Pump Fine." No City employee or agent ever entered Plisner's property to inspect it pursuant to the Ordinance.

On July 16, 2002, the City sent another letter to Plisner's residence stating that it was crediting Plisner's account for all past sump pump surcharges and related late fees because it had discovered that the surcharges had not been assessed uniformly to all property owners within the City who were not in compliance with the Ordinance. In the same letter, however, the City indicated that it would resume assessing a sump pump surcharge to all non-compliant accounts beginning with the upcoming bill for the second quarter of 2002. From that time through the end of 2003, the City assessed $671.65 to Plisner's account in sump pump surcharges and late fees for the non-payment of surcharges.[3] The City eventually certified that amount, plus a $25.00 certification fee for a total of $696.65, to Ramsey County for collection through property taxes. After the surcharges were certified for collection, Plisner paid them, claiming that he did so in order to clear any cloud from the title to his property. Plisner, who was formerly licensed to practice law in Minnesota, then initiated this lawsuit *pro se* in June 2004, alleging that Defendants violated his civil rights and seeking a declaration that the Ordinance was unconstitutional.

---

[3] Although the Ordinance authorized a surcharge of $100.00 per month, the City appears to have assessed the surcharge quarterly.

The City continued to assess sump pump surcharges to Plisner's account in 2004. According to the City, the total amount assessed to Plisner's account in 2004 for surcharges and late fees under the Ordinance was $510.51. The City stopped imposing the sump pump surcharges in the third quarter of 2004 because it claimed it was in the process of amending the Ordinance. Nevertheless, late fees continued to accrue through 2005. As a result, the total amount assessed to Plisner's account for surcharges and late fees through 2004 and 2005 was $617.72. This amount was neither paid by Plisner nor certified to the county for collection.

During a meeting held on January 25, 2006, the City Council revisited the issue of the sanitary sewer code and once again amended Section 205.080. This amendment, directed at the sump pump inspection program, repealed subparagraphs G and D of the Ordinance, thus removing those portions that subjected a property owner to a surcharge for not allowing an inspection. The amendment also introduced a new subparagraph, in which the City reserved the right to obtain administrative search warrants to carry out its inspections:

> J.   The Public Works Director, and any other City employee or agent duly authorized and bearing the proper credentials and identification, may at reasonable times request from the property owner the right to enter upon all properties for the purpose of inspection, observation, measurement, testing, and sampling in connection with the operation of the City sanitary sewer system. If any person refuses to allow their property to be inspected, the City reserves the right to seek an administrative search warrant in order to conduct an inspection in accordance with this Section.

Little Canada, Minn., Mun. Code § 205.080J.

According to the minutes of the January 25, 2006, City Council meeting, "[t]he City Administrator reported that the proposed changes to the City's Sanitary Sewer Ordinance relate to the sump pump portion of the ordinance and bring it into compliance with constitutional requirements." The meeting minutes also report that the amendment was suggested by the City's

4

outside counsel, who is "involved in the Plisner litigation" and who "feels that these changes will bring the Plisner litigation closer to resolution."

The parties then engaged in settlement communications through the spring of 2006, but were unable to reach a resolution. On May 25, 2006, the City tendered a check in the amount of $760.13 to Plisner to reimburse the amount that was assessed to his account in 2003 and certified to Ramsey County for collection. In a letter accompanying the check, the City stated that "[t]here is no condition attached to the tender of this check." The amount of reimbursement represented the $696.65 certified for collection as well as an additional $63.48, which the City included as interest accrued at five percent per annum from the date of the City's receipt of the certified amount. Plisner rejected the check and returned it to the City on June 6, 2006. Shortly thereafter, the City refunded the remaining amount assessed to Plisner's account for the surcharges and late fees he incurred in 2004 and 2005 by crediting $617.72 to his account. The City has not rescinded tender of the reimbursement check, which is retained by the City's outside counsel.

On July 14, 2006, Plisner moved for partial summary judgment. He seeks a declaration that the Ordinance was unconstitutional. He also moves for summary judgment on the issue of the City's liability for the alleged violations of his constitutional rights. On that same day, Defendants moved for summary judgment on the basis that the lawsuit is moot following the amendment of the Ordinance and the City's reimbursement of all surcharges under the Ordinance and associated late fees.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.    Defendants' motion**

   *1.    Declaratory relief*

Plisner seeks a declaration that the Ordinance was unconstitutional. He does not contest the constitutionality of the Ordinance as amended. Defendants assert that Plisner's claim for declaratory relief is moot because the amendment to the Ordinance eliminated the provisions that Plisner found objectionable.

To demonstrate that Plisner's claim is moot, Defendants bear the burden of showing that their allegedly wrongful behavior could not reasonably be expected to recur:

> It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." "[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Young v. Hayes*, 218 F.3d 850, 851 (8th Cir. 2000) (citations omitted). In this case, the City Council amended the Ordinance in 2006 after Hanson had reported that the amendment would bring the Ordinance "into compliance with constitutional requirements." There is no evidence that the City will reenact the challenged version of the Ordinance. Nor is there any evidence that the City continues to operate pursuant to the repealed provisions. In fact, in 2006, the City reimbursed all persons who had incurred surcharges as a result of their refusal to permit an inspection under the prior version of the Ordinance. Under these circumstances, the Court concludes that Plisner's claim for a declaration that the Ordinance was unconstitutional is moot. *See McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1036-37 (8th Cir. 2004) (characterizing possibility that state might repeal statute that rendered plaintiffs' claims moot absent prohibition by court order as a "mere theoretical possibility"); *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) ("Plaintiffs ask this court to declare unconstitutional the zoning scheme as it existed when their license was revoked and to enjoin Richmond from enforcing that scheme. We can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect."); *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) ("[W]e, along with all the circuits to address the issue, have interpreted Supreme Court precedent to support the rule that repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar."); *Nat'l Adver. Co. v. City of Denver*, 912 F.3d 405, 412 (10th Cir. 1990) ("A declaratory judgment on the validity of a repealed ordinance is a textbook example of advising what the law would be upon a hypothetical state of facts." (quotations omitted)).

### 2. *Monetary relief*

Defendants next argue that Plisner's claims for monetary relief are moot because the City tendered the reimbursement check to Plisner and Plisner cannot substantiate any other damages. The Court rejects Defendants' argument:

> [P]laintiffs want compensatory damages (if not punitive damages). [Defendant] maintains that they have not established any compensable loss, but this gets the cart before the horse. A court may resolve such an issue if and only if there is a live controversy. A defendant cannot demand and receive an opinion on the merits of some aspect of plaintiffs' claims, pay off the rest, and then contend the whole suit is moot and must be dismissed, consigning the opinion to advisory status. To eliminate the controversy and make a suit moot, the defendant must satisfy the plaintiffs' *demands;* only then does no dispute remain between the parties.

*Gates v. Towery*, 430 F.3d 429, 431-32 (7th Cir. 2005) (citation omitted); *see Global Relief Found. v. O'Neill*, 315 F.3d 748, 751 (7th Cir. 2002) ("[S]uits seeking money damages . . . cannot become moot unless the defendant satisfies the plaintiff's demand."); *Gibson v. DuPree*, 664 F.2d 175, 177 (8th Cir. 1981) (per curiam) ("A viable claim for damages insures the existence of a live controversy appropriate for judicial resolution—at least to the extent of determining whether a claim is stated and a damage remedy is available.").

**B.    Plisner's motion**

Plisner first argues that he is entitled to summary judgment on his claim for a declaration that the Ordinance was unconstitutional. For the reasons set forth in the discussion of Defendants' motion, this claim is moot.

Plisner next argues that he is entitled to partial summary judgment on his claim under section 1983 against the City for its alleged violation of his Fourth Amendment rights.[4] Section 1983 states in part:

---

[4]    Plisner also asserts that the City violated his right to procedural due process. This assertion first appears in the moving papers in Plisner's reply memorandum. The supplemental

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "In order to prevail on a § 1983 claim, the plaintiff must show that the defendant caused the deprivation of a federal right while operating under color of state law." *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1026 (2006). Here, it is undisputed that the City acted under color of state law when it enforced the Ordinance by assessing the surcharges to Plisner's water and sewer bill. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). The Court therefore turns to whether the City deprived Plisner of his rights under the Fourth Amendment.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The City argues that Plisner has not been deprived of any Fourth Amendment right because there has been no search of his property pursuant to the Ordinance. In support of this position, the City cites to *Yanke v. City of Delano*, 171 F. App'x 532 (8th Cir. 2006) (per curiam) (unpublished). In *Yanke*, the City of Delano enacted an ordinance requiring every property owner who discharges into the city sewer system to obtain an inspection *either* by the city *or* by a private, licensed plumber of the property owner's choosing to ascertain whether there was any prohibited discharge. *Id.* at 533. Under the terms of the Delano ordinance, failure to obtain a property inspection could result in a $100.00 monthly surcharge until such time as an inspection was

---

memoranda submitted with the Court's permission do not adequately address the claim. Accordingly, the Court declines to address at this time Plisner's argument that the City also violated his procedural due process rights.

9

completed. *Id.* The Eighth Circuit held that the Fourth Amendment was not implicated under those circumstances. *Id.*

The City contends that the Eighth Circuit's holding was based on the grounds that (1) plaintiff's property was never searched, and (2) if plaintiff did not want to have his property searched, then he had the option to pay a monthly surcharge. Contrary to the City's assertions, however, the issue on appeal in *Yanke* was whether private plumbers were acting as agents of the city government. *Id.* ("Whether the Fourth Amendment is implicated under the Delano ordinance depends on whether the activities of private plumbers are attributable to the city government.") Although noting that property owners had the option to pay a monthly surcharge if they did not want their premises inspected and that plaintiff's home was never searched, the Eighth Circuit's holding in *Yanke* depended on its determination that the acts of private plumbers could not be attributed to the city. *Id.*

Unlike *Yanke*, the Ordinance at issue here contained no provision allowing homeowners the option to have a private plumber inspect their homes. Instead, the Ordinance expressly stated that inspections were to be carried out by authorized City employees or agents. The provision that saved the Delano ordinance—the private plumber option—was missing from the Ordinance at issue in this case. Thus, the City's response to Plisner's refusal to consent to a warrantless search of his home by City employees or agents—surcharges on his water and sewer bill—violated Plisner's Fourth Amendment rights. *See Camara v. Mun. Court*, 387 U.S. 523, 540 (1967); *See v. City of Seattle*, 387 U.S. 541, 546 (1967); *Yanke*, 171 F. App'x at 533. The Court therefore grants Plisner's motion insofar as he seeks summary judgment on the issue of the City's liability for the deprivation of his Fourth Amendment rights.

Finally, Plisner asks the Court to enter a judgment against the City under Rule 54(b) of the Federal Rules of Civil Procedure. The Court denies Plisner's request because he has yet to prove his damages from the City's deprivation of his Fourth Amendment rights and his other claims remain. *See* Fed. R. Civ. P. 54(b) (allowing entry of a final judgment as to one or more but fewer than all of the claims); *Guerrero v. J.W. Hutton, Inc.*, 458 F.3d 830, 833 (8th Cir. 2006) (recognizing that certifications under Rule 54(b) should not be routinely granted).

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plisner's Motion for Partial Summary Judgment [Docket No. 43] is GRANTED IN PART and DENIED IN PART.

2. Defendants' Motion for Summary Judgment [Docket No. 47] is GRANTED IN PART and DENIED IN PART.

3. Plisner's claim for a declaration that the Ordinance was unconstitutional is DISMISSED AS MOOT.

4. The City is liable to Plisner under 42 U.S.C. § 1983 for its violations of his Fourth Amendment rights.

Dated: February 9, 2007

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge